HAWKINS *v.* HAWKINS.

(No. 82-CV-0620—Decided January 12, 1984.)

Court of Common Pleas of Clermont County.

*Mr. C. D. Mullenix,* for plaintiff.
*Mr. James G. Nichols,* for defendant.

RINGLAND, J. This matter came for hearing on the complaint of plaintiff, Jack A. Hawkins, and the answer of defendant, Joanne J. Hawkins, on March 21, 1983. Both plaintiff and defendant were present and represented by counsel and both parties submitted evidence by way of testimony. The court finds that on November 18, 1968, the parties had a hearing in a separate case No. 36499 in this court concerning divorce between the parties. This divorce was journalized on February 7, 1969 and the decree provided that the real estate located at 4229 Tobasco Road "remain in the joint names * * * [of both parties] for a period of five years but during that time * * * [Joanne Hawkins and the children] shall have the exclusive use of the real estate and * * * [Jack Hawkins] shall not be permitted on the premises. * * * At the end of the five-year period the property shall then be the joint property of * * * [both parties], * * * [Joanne Hawkins] however to have in addition to her one-half interest the amount of the net reduction in principal amount due on the mortgage note held on the real estate."

After the five-year period no mention was made between the parties concerning termination of this one-half interest and no mention was made about payments of rent by defendant to plaintiff. On June 2, 1982 plaintiff filed this action being a com-

plaint for partition. On September 9, 1982 the court issued a decree for partition appointing three appraisers who submitted their appraisal of the real estate at $55,000. Plaintiff then elected not to take at the appraised value and filed a motion to require defendant to elect to take. The first issue therefore before this court is what is the amount of each party's equity? Plaintiff claims that he is entitled to rental for the period from 1976 to present and defendant claims that she is entitled to a "set off" of repairs to the real estate, taxes, insurance while she occupied the residence, and the reduction of the mortgage principal as previously ordered in the divorce decree in case No. 36499.

The prior court in its decree specifically kept title in both parties to be determined at another time and not necessarily by the same forum. Counsel for the defendant has argued that this decree creates joint tenancy rather than tenancy in common and is not therefore specifically provided in R.C. 5307.25. The court disagrees. The Statute of Anne (1705), 11 Eng. Stat. 161, Ch. 16, Section 27, provides for partition by a *joint tenant* or tenant in common. Where a joint tenancy may be expressed without words of survivorship it will be considered as tenancy in common, *Foraker* v. *Kocks* (1931), 41 Ohio App. 210. The decree of divorce by judicial order has maintained the real estate in joint ownership. Joint tenancy in Ohio is no longer recognized and whenever the expression "joint tenancy" may be found without any effort to provide expressly for survivorship, it is uniformly construed as tenancy in common. *In re Estate of Hutchison* (1929), 120 Ohio St. 542. Therefore it is the holding of this court based upon failure to show any expressed rights of survivorship as well as the wording of the decree that this real estate is clearly held by both parties as tenants in common.

Defendant further argues that plaintiff is not entitled to rent because he made no demand upon his ex-wife for rent. The court finds that based upon *West* v. *Weyer* (1888), 46 Ohio St. 66, and followed in *Cohen* v. *Cohen* (1952), 157 Ohio St. 503 [47 O.O. 363], that no adverse demand is required by plaintiff. In the case at hand rents therefore go back to the statute of limitations which here is six years (June 2, 1976). As to the amount of rent, the plaintiff based his opinion of the rent of the house on the apartment which he occupied as well as his review of listings in the newspapers for the past six years. For each year the figure of $350 was reasonable and while he indicated it may be more, no specific figure was given. Defendant, on the other hand, while initially having no idea of the amount, stated that based upon her experience with the expense of maintaining the household as well as her experience of living in the household and outside sources consisting of newspapers, etc., the figures were somewhat less (as testified to and as mentioned both in evidence and reiterated in defendant's trial brief). The court finds that any testimony of a non-expert homeowner concerning the value of the real estate based upon hearsay or third-party sources cannot be considered. *Weir* v. *Miller* (Apr. 13, 1983), Butler App. No. 82-04-0044, unreported. Therefore taking away both parties' sources the court must therefore base its decision on the parties' own personal knowledge. On one hand the plaintiff has based his knowledge on his occupancy of an apartment and on the other defendant has based her testimony of personal knowledge of occupancy of her home for over ten years. These facts, the plaintiff's testimony that the rental figure was the same in 1976 as is at present, as well as the demeanor of both parties, convince the court that defendant's testimony concerning the amount of rents is the more logical and credible; therefore, the court so holds that for 1977 the rentals were $200 per month for a total of $2400, for 1978 — $225 per month for a total of $2700, for 1979 — $225 per month for a total of $2700, for 1980 — $250 per

month for a total of $3000, for 1981 — $300 per month for a total of $3600, for 1982 — $325 per month for a total of $3900, for 1983 — $350 per month making a total of $4200, making a grand total of $19,700. Therefore plaintiff is entitled to one-half of these rents based on *Cohen* v. *Cohen, supra.*

However, the court finds that defendant is entitled to a setoff. The evidence has shown by testimony of defendant's accountant as well as by a defense exhibit, that the mortgage principal was reduced from a sum of $9395.71, as of the day of the decree of divorce, to the amount of zero in 1979; and that because the court speaks through its journal entry, the day of the decree is controlling since the divorce decree does not specify any other time. See Civ. R. 54 and 58. The defendant is therefore entitled, per the decree, to the setoff of $9395.71. The court further finds that defendant is entitled to a setoff of one-half of her out-of-pocket expenses pursuant to *Markland* v. *Harley* (1958), 107 Ohio App. 245 [8 O.O.2d 177], for repairs made of $1825.[1] The court rejects any claim for services or labor, since labor was provided by the party and she was not accustomed to charging for her labor or by her son who testified that he provided this labor as an act of love and gift for his mother. The court also awards a setoff in the amount of one-half of $3814.44 for taxes paid from 1976 to present by defendant to which plaintiff apparently does not disagree and in concurrence with *Markland, supra.*

The next issue is whether or not plaintiff is entitled to attorney fees, how this must be proved, and the amount to be determined. He cites Rule 11 of the Rules of Practice of the Court of Common Pleas of Clermont County, which provides that in partition cases where the land is sold, counsel fees shall be allowed by the court and taxed as part of the costs as follows:

"A. On all sums where the amount of sale price is Ten Thousand ($10,000.00) Dollars or under, six percent (6%), and in addition thereto on all sums where the amount of sale price is more than Ten Thousand ($10,000.00) Dollars, but Twenty Thousand ($20,000.00) Dollars or less, four percent (4%), and on all additional sums where the sale price is in addition to or more than Twenty Thousand ($20,000.00) Dollars, two percent (2%). A minimum fee of One Hundred Fifty ($150.00) Dollars will be allowed in all cases, and an additional amount if the Court deems it just and proper;

"B. Where the land is divided among the parties, counsel fees according to the foregoing schedule, based on the value of the land, as it may be fixed by the Court, shall be allowed and taxed as part of the costs; * * *"

This court has ruled that Rule of Practice 11 of the court of common pleas was not applicable for fixing of plaintiff's attorney fees in a past divorce partition suit, citing *Young* v. *Stone* (1896), 55 Ohio St. 125. The court therefore has permitted counsel for plaintiff to present evidence and testimony concerning the amount of attorney fees that were reasonable pursuant to R.C. 5307.25. Counsel for defendant made no request for fees.

Evidence adduced indicates that the uncontroverted reasonable hourly rate would be $75 per hour; that the entire litigation, which was adverse and contested at every step, was 21.35 hours; that 11.10 hours were expended up to the entry determining that the property be partitioned and that subsequent hours

---

[1] Outside paint $50, wallpaper $30, shower and bathroom $50, other bathroom items $50, bathroom carpet $35, shower door $125, toilet and vanity $125, towel hanger $35, kitchen floor $70, steel sink $50, sink top $50, fixtures and plumbing $200, shower head $39, tile back splash $40, paneling $75, door locks $16, wiring $75, plumbing $75, roof $200, two windows $150, gutters $125, storm doors and screens $125, furnace repair $35 — for a total of $1825.

were spent preparing and litigating the issues of the amount of equities, rents and setoffs. Testimony also adduced indicates that plaintiff has received some of the fees from his client pursuant to a fee agreement.

Counsel for defendant argues that because plaintiff's counsel has received fees from plaintiff, plaintiff's counsel waives the right to collect fees from the proceeds, citing *Young* v. *Stone, supra;* and that none of the efforts of plaintiff's attorney was for the benefit of all parties in that defendant must lose her home after the sheriff's sale and move from her marital residence and seek residence elsewhere.

Plaintiff, on the other hand, indicates that any waiver alleged is an affirmative defense and should have been pleaded in the original pleadings, which it was not. Further, he argues that the partition had to occur in that it was a question left open by the divorce decree and is for the common benefit of all parties.

A reading of *Young* v. *Stone, supra,* indicates that a waiver of attorney fees did occur where the attorney entered into a contingent fee contract with his client. That is, the attorney was to receive a percentage of the proceeds received from the partition sale. No evidence was adduced to indicate that the fee in the case at hand was a contingent fee. R.C. 5307.25 indicates that in setting an attorney fee for the plaintiff, the court should take into regard "the interest of the parties, the benefit that each may derive from a partition * * *," *i.e.,* the amount of monies the plaintiff will receive. Certainly a contingent fee is in direct proportion to the amount received by plaintiff and replaces the above fee as in R.C. 5307.25. However, in the case at hand, the fee is not a contingent fee and there is no testimony to the amount that plaintiff's counsel has received; there is no indication that plaintiff's counsel has been fully compensated. Therefore *Young* v. *Stone, supra,* is not applicable to this

particular set of facts before the court and the court finds that there is no waiver. Because of the above holding, the issue of pleading the waiver is moot.

R.C. 5307.25, setting attorney fees in partition, states:

"Having regard to the interest of the parties, the benefit each may derive from a partition, and according to equity, the court of common pleas shall tax the costs and expenses which accrue in the action, including reasonable counsel fees which must be paid to plaintiff's counsel unless the court awards some part thereof to other counsel for services in the case for the common benefit of all the parties; and execution may issue therefor as in other cases."

A strict reading of this statute indicates that in assessing plaintiff's counsel fees that the court should take into consideration the interest of the parties and the benefit each derives from the partition as well as common equity principles. The "common benefit" test should only apply to determination of "other attorneys" or defense attorney fees. However, this is not the interpretation which has been given to the statute in *Young* v. *Stone, supra.* The Supreme Court held as to R.S. 5778 (which is worded the same as its successor R.C. 5307.25) that the common benefit test should apply to not only determination of "other counsel" fees but also a determination of plaintiff's attorneys fees, "so that no counsel fee, *whether to the plaintiff's counsel* or otherwise, can be allowed by the court and taxed as costs in the case, under this section, unless the services were rendered for the *common benefit of all the parties."* (Emphasis added.) *Id.* at 134. While the decision of the Supreme Court appears to fly in the face of common sense interpretation of the statute, nevertheless, this case holding has not been overruled. Thus it becomes necessary to determine, as dictated by the Supreme Court, what is "common benefit of all the parties," so that the services rendered by plaintiff for

the common benefit of the parties in this case can be reasonably compensated at $75 an hour.

Albeit the apparent "national" minority holding, the filing of an answer does not *per se* preclude the allowance of attorney fees. *Capuccio* v. *Caire* (1932) 215 Cal. 518, 11 P. 2d 1097. This seems to be the more enlightened approach rather than to follow the majority *per se* rule that holds if there is a contest or dispute that in and of itself disallows plaintiff's attorney fees. Each fact pattern should be determined on a case by case method to ascertain whether common benefit exists. Ohio has had no case law concerning determination of this issue. It is quite clear however, that it was necessary for the plaintiff to file the partition to "close out" the open-ended decree and have the marital property, which had been the subject of the decree, finally divided. The courts have encouraged in the division of marital property, "disentanglement" or final disposition of marital property. It would be in the parties' interest to fully dispose of the issue of the real estate by partition. Therefore the 11.10 hours expended by plaintiff's attorney in having the property partitioned is clearly for the common benefit of both parties and would be reimbursable at $75 an hour. However, time spent in controversy over the amount of equities, rents and setoffs has been held to be for the benefit of the particular client and not for the benefit of the parties and therefore is not reimbursable. *Brusco* v. *Brusco* (1965), 241 Ore. 550, 407 P. 2d 645. The amount of equity and setoff in the case at hand was bitterly contested and a great deal of advocacy on both sides was expended to propound each party's position. This court is hard-pressed to find that the time spent in preparation for trial, and the actual trial on these issues, were for the benefit of both parties. Further, it is clear that the burden of proof is upon the plaintiff to show that services after the partition were rendered for the benefit of all. *Glim-cher* v. *Doppelt* (1966), 5 Ohio App. 2d 269 [34 O.O.2d 435]. Sufficient evidence has not been adduced that the hearing on determination of equities was for the common benefit. Therefore the court finds that plaintiff is entitled to reimbursement of attorney fees from the sale in the amount of $832.50 only ($75 × 11.10 hours).

The next issue raised is that if the court orders the property sold, is defendant, the present resident, required to pay the local, customary ten percent deposit at the time of the sheriff's sale should she decide to bid on the property? Defendant argues that because she is a co-owner she should not be required to make the deposit of ten percent.

The court in ordering a sale may specifically provide that a deposit be made by the purchaser simply as a pledge that the bid will be made good. See *Feike* v. *Cincinnati & Eastern Ry. Co.* (1887), 3 Ohio C.C. 72, 2 Ohio C.D. 41. See, also, 32 A Ohio Jurisprudence 2d (1975) 554-555, Judicial Sales, Section 75, and 47 American Jurisprudence 2d (1969) 537, Judicial Sales, Section 301. The reason is that if the purchase price is not paid then the property may be resold and if the property sells for less than the original bid, the deposit may be applied to make up the deficiency. The fact that a co-owner bids on the property does not change the requirements or previous court order; her failure to comply with payment may result in the resale at an amount less than the original sale in which she actively bid. In this case plaintiff would then be damaged since the equities have already been determined. The only other alternative would be to adjust the equity at the second sale, should there be one, to take into consideration the difference between the first and second sale should that occur. This would, however, lead to a possible continual on-going events of bids by the spouse or co-owner, failure to carry forth with the sale, and readjustment of

the equities in an endless progress of modifications of court orders.

The most economical policy would be therefore to require the same terms of sale, especially as to deposit, for *all* parties involved in the bidding process.

*Judgment accordingly.*