OPINION
Defendant-appellant/cross-appellee Joseph A. Pingue, Sr. (hereinafter "father") appeals the November 23, 1998 Judgment Entry of Verdict and the November 30, 1998 Judgment Entry Regarding Issues of Attorney Fees and Real Estate Commission, entered by the Delaware County Court of Common Pleas. Plaintiff-appellee/cross-appellant Joseph A. Pingue, Jr. (hereinafter "son") cross-appeals.
 STATEMENT OF THE FACTS AND CASE
In September, 1988, father and son purchased residential real property located at 8724 Worthington-Gallina Road, Orange Township, Delaware County, Ohio, with the intention of commercially developing the cite. Father and son each owned an undivided one-half interest in the real estate. When the property was purchased, father and son entered into an oral partnership agreement for the management and upkeep of the property. Father and son agreed each would be consulted and both would have to concur in any and all action taken with regard to the property, including all matters of income received and expenditures made. Despite early disputes over the property, father and son entered into a settlement agreement. Pursuant to the agreement, neither party owed the other any monies in connection with the property as of April 13, 1993. In March, 1994, father provided son with an accounting for the 1993 year, which showed a loss. On April 5, 1995, son received a statement reflecting his share of the loss for the 1994 year. The following April, father sent son a statement showing son's share of the loss for 1995. Seven months later, son received an accounting for the 1996 year to date. On April 18, 1997, son received an accounting for the entire 1996 year and an accounting for the period from January 1, 1997, through April 30, 1997. Each year, new categories of charges were added to the statements, including interest and management fees, and each year, the amount father claimed son owed as a result of a loss increased substantially. On May 17, 1996, son filed a complaint in the Delaware County Court of Common Pleas seeking partition, an accounting, and damages for breach of fiduciary duty and breach of oral contract. Father filed a timely answer and asserted counterclaims against son seeking reimbursement for monies expended for the operation and management of the property and alleging breach of contract, tortious interference with his business relationship with his employees, conversion, and detrimental reliance. Via Judgment Entry dated November 6, 1996, the trial court by agreement of the parties appointed Don Fisher as appraiser for the subject property. The entry set forth the election process to be followed by either party who wished to purchase the real estate. The trial court ordered father to provide son with an accounting of receipts, income, disbursements and expenses with documentation for the period of time during which the parties had owned the property. In his Appraisal Report of December 19, 1996, Fisher estimated the market value of the property to be $130,000. On January 28, 1997, son filed a Notification of his intention to purchase the property at the appraised value. On April 2, 1997, father filed a Notification of Refusal to Sell and Notification of Offer to Buyout. Pursuant to son's election, the trial court ordered father to execute a Quitclaim Deed, and ordered son to tender 50% of the net equity in the property to father. As neither party wished to sell the property to the other and each party wished to purchase the property, the trial court ordered the real estate be sold at public auction for a minimum bid of $117,000. Father ultimately obtained a purchase offer from a private individual for an amount in excess of the appraised value. Consequently, the trial court ordered the property be sold pursuant to the terms of the Real Estate Purchase Contract. The trial court ordered the remaining issues be referred to arbitration. An arbitration hearing was conducted on November 4, 1997. Via Decision and Award of Arbitration dated November 26, 1997, the arbitrators awarded son attorney fees in the amount of $5,000, but found son was not entitled to any other relief. The arbitrators awarded father $6,631.62, including interest, for funds advanced by him, and $2,850 in attorney fees. On December 9, 1997, father filed a notice of appeal of the arbitrator's decision and award, and moved the trial court to order and schedule a trial de novo. The trial court scheduled a jury trial for May 12, 1998, and a final pre-trial conference for May 4, 1998. On April 3, 1998, Attorney Kenneth Boggs, father's attorney, filed a Motion to Withdraw as Counsel of Record, which the trial court granted. Father did not retain new counsel. Shortly thereafter, father filed a pro se motion in limine seeking "an order to exclude all testimonial evidence * * * and prohibit all counsel, parties and witnesses [from making any] reference to the fiscal [sic] and mental abuse of any member of [father's] family" as alleged during the divorce proceedings between father and Joanna Pingue, father's ex-wife and son's mother, and a civil action in which father was involved. The trial court granted the motion and ordered any reference to or evidence regarding settlement negotiations and physical or mental abuse of son by father be excluded. On April 22, 1998, father filed a Motion for a Leave to Amend Pleadings to allege damages in the amount of $25,000, consisting of $17,500 in real estate commission and $7,500 for maintenance and repair of the subject property. The trial court granted the motion relative to father's request to increase his demand on the claim for maintenance and repairs. The trial court ordered the issue of the real estate commission be tried separately to the court. On May 1, 1998, father filed a Second Motion for a Live [sic] to Amend Pleading to include a claim of tortious interference with business, which the trial court denied as untimely and likely to confuse the jury. On May 11, 1998, son filed a Motion to Continue due to the hospitalization of Attorney Anthony Heald, son's counsel. Via Judgment Entry dated September 9, 1998, the trial court rescheduled the trial until November 9, 1998. Father filed a Motion to Extend the Discovery Deadline on September 18, 1998, which the trial court denied. The matter proceeded to trial by jury on November 9, 10, and 11, 1998. After the close of father's case, and upon motion of son, the trial court dismissed the second, fourth, and fifth counts of father's counterclaim pursuant to Civ.R. 50. After hearing all the evidence and deliberations, the jury issued a general verdict for father on his counterclaim and awarded him judgment in the amount of $4,075. The trial court memorialized the verdict and judgment in a Judgment Entry of Verdict dated November 23, 1998. This judgment entry also memorialized the trial court's imposition of a $250 fine against father for violating the court's order to refrain from continually interjecting statements in an attempt to taint the jury, and the trial court's dismissal of count three of father's counterclaim (tortious interference with employee-employer relationship) as a final sanction for father's failure to comply with the court's order. The trial court scheduled an oral hearing on the issue of attorney fees and the real estate commission for November 30, 1998. Via Judgment Entry Regarding Issues of Attorney Fees and Real Estate Commission, the trial court found Attorney Heald performed 13.4 hours of legal work for the benefit of both parties for the partition or in seeking an accounting, and awarded Attorney Heald $2,010 in attorney fees. The trial court did not award attorney fees to father. The trial court further ordered Nu-Trend Realty, Inc., a corporation in which father is the sole shareholder, be awarded $17,500 as the real estate commission on the sale of the subject property. It is from these judgment entries father appeals, raising the following assignments of error:
 I. THE TRIAL COURT ABUSED ITS DISCRETION IN DISMISSING APPELLANT'S THIRD COUNTERCLAIM, PERTAINING TO TORTIOUS INTERFERENCE WITH EMPLOYEE, AS A SANCTION FOR PURPORTEDLY ASKING IMPROPER QUESTIONS IN FROM OF THE JURY AND THE COURT FURTHER ABUSED ITS DISCRETION IN FINDING APPELLANT IN CONTEMPT OF COURT [TR. 104, 221].
 II. THE TRIAL COURT ERRED IN REFUSING TO ALLOW APPELLANT TO ADDUCE EVIDENCE REGARDING INTERFERENCE WITH APPELLANT'S EMPLOYEES UNTIL A PARTICULAR EMPLOYEE TESTIFIED. [TR. 166-168].
 III. THE TRIAL COURT ABUSED ITS DISCRETION AS EARLY AS THE MAY 4, 1998 PRETRIAL HEARING IN REFUSING TO ALLOW APPELLANT TO AMEND HIS COUNTERCLAIM TO INCLUDE INTENTIONAL INTERFERENCE WITH HIS BUSINESS AS WELL AS WITH HIS EMPLOYEES, AND IN DENYING APPELLANT THE RIGHT TO INTRODUCE EVIDENCE AS TO CONVERSION OF PERSONAL PROPERTY. [TR. OF 5/4/98 PRETRIAL 13, 14].
 IV. THE TRIAL COURT ERRED IN GRANTING ATTORNEYS FEES TO PLAINTIFF IN THE PARTITION CASE AND FURTHER ERRED IN DENYING APPELLANT THE OPPORTUNITY TO ADDUCE EVIDENCE TO SUPPORT AN AWARD OF ATTORNEY FEES TO APPELLANT [J.E. 11/30/98, TR. 4, 5 OF 11/24/98 TRIAL].
 V. THE TRIAL COURT ERRED IN FAILING TO AWARD APPELLANT PRE-JUDGMENT INTEREST ON HIS JURY AWARD AND THE REAL ESTATE COMMISSION AWARD AS WRONGFULLY EXCLUDED EVIDENCE WOULD HAVE ESTABLISHED AN AGREED INTEREST RATE ON THE AMOUNTS DUE [J.E. 11/23/98, 11/30/98].
 VI. THE TRIAL COURT ERRED IN PRESENTING CONFUSING INSTRUCTIONS TO THE JURY AND IN REFUSING TO ALLOW APPELLANT TO INTRODUCE TAPED CONVERSATIONS, WHICH INFLUENCED THE JURY NOT TO AWARD APPELLANT PAYMENT FOR HIS WORK IN MANAGING THE REAL ESTATE WHICH THE SUBJECT OF THE PARTITION ACTION [TR. 502].
Son cross-appeals as follows:
 I. THE COURT ERRED IN AWARDING NU-TREND REALTY, INC. ANY COMMISSION IN THE INSTANT CASE.
 II. THE COURT ERRED IN AWARDING ANY JUDGMENT AGAINST THE PLAINTIFF/APPELLEE.
Any other facts relevant to our discussion of father's and/or son's assignments of error shall be contained therein.
 APPEAL I
In his first assignment of error, father maintains the trial court abused its discretion in dismissing count three of his counterclaim as a sanction for father's purported failure to comply with the court's order. Father also contends the trial court abused its discretion in finding him in contempt of court. Civ.R. 41(B)(1) provides: Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim.
This provision applies to the dismissal of a counterclaim pursuant to Civ.R. 41(C). The power to dismiss for failure to comply with a court order is within the sound discretion of the trial court, and appellate review is confined solely to whether the trial court abused that discretion. Pembaur v. Leis (1982), 1 Ohio St.3d 89,91 (Citation omitted). The term "abuse of discretion" connotes more than error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court in granting such motion. Klever v. Reid Bros. Express, Inc. (1951),154 Ohio St. 491, para. 2 of syllabus. In determining whether dismissal is appropriate, the general test "is whether there is `a clear record of delay or contumacious conduct by the plaintiff'." Dukes v. Cole (1985), 23 Ohio App.3d 65, 66 (Citations omitted). "[L]esser sanctions will normally suffice, and except in the most `flagrant circumstances' the trial court ought not to resort to sanctions which deprives [sic] the litigant of his opportunity to pursue his claim." Id. (Citations omitted). A key witness in father's case-in-chief relative to count three of his counterclaim was his former employee, Christina Rogers. Although father subpoenaed Rogers, it became apparent early in the proceedings Rogers would not appear at trial to testify. Prior to the commencement of the second day of the trial, the trial court ruled father's examination of Wendy DeHaven, whose testimony he intended to solicit for purposes of corroborating Rogers' testimony, would be conducted outside the presence of the jury and reread to the jury if Rogers ultimately testified. The trial court's ruling applied to the testimony of any witness father intended to call for the same purpose. Despite this pronouncement, father attempted to adduce testimony in front of the jury from Charles Lewis concerning incidents for which no foundational testimony from Rogers had been given. Attorney Heald objected and moved to strike the testimony. Out of the presence of the jury, Attorney Heald made an oral motion to dismiss. The following dialogue occurred:
 THE COURT: All Right. So, Mr. Heald, you made a motion to grant judgment in favor of [son] on the counterclaim for intentional interference with the contractual relationship of an employer-employee.
 MR. HEALD: That's absolutely correct, your Honor, and that's based on the fact that the Court has now warned [father] a whole bunch of times. We had a very specific hearing this morning about this exact issue, and it is no mistake that within an hour after that, this testimony was presented. And it's absolutely no mistake, there is no suggestion or should not be any suggestion that this is an accident. The Court has been so much more lenient with [father] than the court would ever be were he represented, we would respectfully submit there is not other cure to this, that issue.
 THE COURT: All right. [Father] we have been very lenient with you. It is not like you don't understand what the order of the Court has been and what the directives have been and what the instructions have been. It is — you have had plenty of experience in court. So you certainly are not a neophyte as to procedures and reasons for doing things. I have explained to you reasons for doing things.
 So, you have left me no choice at this point, but to grant the motion and direct a verdict in favor of [son] as a sanction for you violation of the court's directives. * * * your intentional solicitation of testimony, contrary to the orders of the court, with no other purpose than to taint the jury, that involves the — — our feeling of being defamed by your son, which has been presented through your testimony and also through the testimony of your other witnesses as far as this alleged stalking incident.
* * *
Transcript of Proceedings, November 10, 1999, at 221-222.
In the instant action, the trial court had repeated conversations with father, both before and during the trial, about the proceedings in general and the specific limitations on the evidence which could and could not be presented to the jury. Despite repeated warnings over the course of the trial, and the trial court's finding him in contempt and fining him $250, father continued to blatantly disregard the court's directives. We find such actions constitute "contumacious conduct." Upon review of the record, and in light of the trial court's advising father of the potential for dismissal of his claims, we find the trial court did not abuse its discretion in dismissing count three of father's counterclaim. We now turn to the second prong of father's first assignment of error, in which father asserts the trial court abused its discretion in finding him in contempt. Father's argument reads, in toto: Moreover, the Court imposed the sanctions of contempt on [father] for matters that were no more than disputes over the character of the evidence presented. For instance, the Court fined [father] $250 for contempt during the course of the jury trial merely because [father] referenced evidence which may have gone to business interference rather than employee interference [Tr. 103, 104].
Brief of Appellant at 12.
As discussed, supra, the trial court repeatedly warned father about his conduct in front of the jury. Father failed to heed these warnings. In fact, a review of the record reveals father purposefully disregarded the court's orders. Accordingly, we find the trial court did not abuse its discretion in finding father in contempt. Within this assignment of error, father "submits the Trial Judge's dismissal of [his] claims was merely the culmination of a series of actions by the Trial Judge which demonstrate abuse of discretion and which prejudiced [him]." Brief of Appellant at 10. In support of this submission, father cites to a number of incidents which occurred over the course of the proceedings. First, father points to the trial court's denial of his request for leave to depose son and denial of his motion to conduct additional discovery. Next, father refers to the trial court's failure to enforce its ruling on father's motion in limine. Lastly, father discusses the trial court's inconsistency in its rulings on the parties' use of documentary evidence, allowing son to introduce notes drafted by Christina Rogers, but preventing father from examining witnesses about the same evidence. App. R. 12(A)(2) provides: The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A).
App. R. 16(A) provides, in pertinent part:
(A) Brief of the appellant.
 The appellant shall include in its brief, under the headings and in the order indicated, all of the following:
* * *
 (3) A statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected.
* * *
 (7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.
* * *
Because father failed to separately assign as error the aforementioned contentions, we shall disregard his arguments pursuant to App. R. 12(A)(2), and 16(A)(3) and (7). Father's first assignment of error is overruled.
 II
In his second assignment of error, father asserts the trial court erred in refusing to allow him to adduce evidence relative to count three of his counterclaim until a particular witness testified. Specifically, father takes issue with the trial court's prohibition on his presenting the testimony of Wendy DeHaven to the jury until Christina Rogers testified; the trial court's limitation on his direct examination of Charles Lewis; and the trial court's ruling on the inadmissibility of a police report. The basic principle of a "tortious interference" action is that one, who is without privilege, induces or purposely causes a third party to discontinue a business relationship with another is liable to the other for the harm caused thereby. (Citation omitted). The elements essential to recovery for a tortious inference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. (Citations omitted).
Wolf v. McCullough-Hyde Mem. Hosp. (1990), 67 Ohio App.3d 349,355.
Assuming, arguendo, the trial court erred in not allowing the jury to hear the testimony of Wendy DeHaven, in limiting the testimony of Charles Lewis, and in ruling the copy of the police report was inadmissible, we find, even with this evidence, father still could not establish a prima facie case of tortious interference with a business relationship. A review of the record reveals son's alleged harassment of Christina Rogers stopped in the late spring/early summer of July, 1995, but Rogers did not terminate her employment with father until 1997. Because Rogers continued to work for father throughout the period of the alleged harassment and for at least one and one-half years after the alleged harassment stopped, we find father is unable to prove an intentional interference by son which caused Roger's to discontinue her business relationship with father. Accordingly, we find any error in the trial court's rulings on the aforementioned testimony and evidence is harmless. Father's second assignment of error is overruled.
 III
In his third assignment of error, father submits the trial court abused its discretion in denying his motion to amend his counterclaim to include a claim of tortious interference with business. "The language of Civ.R. 15(A) favors a liberal policy when the trial court is confronted with a motion to amend a pleading beyond the time limit when such amendments are automatically allowed." Wilmington Steel v. Cleveland Elec. Illuminating Co. (1991), 60 Ohio St.3d 120, 121-122. Civ.R. 15(A) provides, "Leave of court shall be freely given when justice so requires." This court's role is to determine whether the trial court's decision to deny father's motion for leave to amend his counterclaim was an abuse of discretion. Wilmington Steel, supra at 122 (Citation omitted). Father filed a notice of appeal of the arbitrator's decision and award on December 9, 1997. Via Judgment Entry dated December 12, 1997, the trial court scheduled the matter for trial on May 12, 1998. Father filed his Second Motion for a Live [sic] to Amend Pleadings on May 1, 1998. The trial court denied his motion "as being untimely and would cause to confuse the jury." Given the close proximity of the request to amend to the original trial date, we find the trial court did not abuse its discretion in denying father's motion for leave to amend his counterclaim. Within this assignment of error, father also alleges the trial court abused its discretion in prohibiting him from introducing evidence of son's conversion of his personal property, a claim asserted in father's counterclaim. In support of this assertion, father references statements made by the trial court at the May 4, 1998 pretrial hearing and at trial. During the May 4, 1998 pretrial, the trial court discussed with father and Attorney Heald father's desire to call Attorney Heald as a witness in his case-in-chief. After extensive discussion, the trial court ruled Mr. Heald would not testify in the matter, whereupon the following dialogue occurred between father and the trial court:
MR. PINGUE, SR.: Well, Your Honor, then you are depriving me.
 THE COURT: If you want to proceed about the personal property, you know, you do that through the divorce.
MR. PINGUE, SR.: Your Honor — —
 THE COURT: We are not even going to talk about conversion of personal property. Now, if the divorce proceeding shows something other than that, you can still proceed against your son, assuming that you don't go forward on that issue in this case.
Transcript of May 4, 1998 Pre-Trial Hearing at 32.
At the close of father's case-in-chief, the trial court granted son's motion for a directed verdict on father's conversion claim, finding:
 THE COURT: On the conversion, there's been no evidence presented that on the counterclaim that [son] converted or used any property of [father] for his benefit. [Father] feels that the court cut him short on that. * * * I think there was a motion in limine at the outset to insure that there would be no testimony about divorce property which included jewelry.
MR. HEALD: Stamp collection.
 THE COURT: And a stamp collection. The ruling of the court was that there would be no testimony about any property that was disposed of in the divorce, and that was strictly all the ruling involved. There's been no evidence presented as to conversion of any other property, or any property whatsoever. So, we will grant that motion.
Transcript of Proceedings, Nov. 10, 1998, at 351.
Father asserts, "Clearly, the record shows the Judge at the pretrial hearing of May 4, 1998 ordered [father] could not put on evidence of conversion, then at trial dismissed [father's] conversion claim for a lack of evidence." Brief of Father at 18. Father has failed to identify for us where in the record he attempted to proffer testimony regarding son's alleged conversion of his personal property. Despite the trial court's statement at the pretrial hearing, father has no excuse for failing to preserve the record for appeal by proffering his intended testimony. As a result of his failure to proffer, we find father waived his right to allege error in the trial court's dismissing his conversion claim. Father's third assignment of error is overruled.
 IV
In his fourth assignment of error, father asserts the trial court erred in granting attorney fees to son in connection with the partition action, and in denying father the opportunity to present evidence in support of an award of attorney fees on his behalf. R.C. 5307.25 provides: Having regard to the interest of the parties, the benefit each may derive from a partition, and according to equity, the court of common pleas shall tax the costs and expenses which accrue in the action, including reasonable counsel fees, which must be paid to plaintiff's counsel unless the court awards some part thereof to other counsel for services in the case for the common benefit of all the parties; and execution may issue therefor as in other cases.
(Emphasis added).
In an action for partition, a trial court is not permitted to make an award of attorney fees under R.C. 5307.25 unless the services rendered by counsel seeking the fees were rendered for the common benefit of all the parties. Hawkins v. Hawkins (1984), 11 Ohio Misc.2d 18,20. A trial court's determination to grant or deny a request for attorney fees will not be disturbed absent an abuse discretion. Motorist Mut. Ins. Co. v. Brandenburg (1995), 72 Ohio St.3d 157,159. On November 24, 1998, the trial court conducted a hearing on the issues of attorney fees and real estate commission. At the hearing, son presented evidence which established Attorney Heald performed 13.4 hours of legal work relative to the partition action for the benefit of both parties. In light of the evidence presented, we find the trial court did not abuse its discretion in awarding attorney fees to Attorney Heald based upon the fact the work he performed was for the benefit of both father and son. At the hearing, the trial court found there was no basis in the law to support an award of attorney fees for father's counsel. Upon review of the record, we find the trial court did not abuse its discretion in denying father's request to present evidence on the issue. Father's fourth assignment of error is overruled.
 V
In his fifth assignment of error, father asserts the trial court erred in failing to award him prejudgment interest on the jury award and the real estate commission because evidence, which the trial court excluded, would have established the parties agreed upon an interest rate on the amounts due. In support of his assertion, father attempts to proffer to this Court Exhibit E, a letter written by son in which son agreed to pay interest at the rate of 9% on all amounts son owed to father. At trial, father attempted to introduce the aforemention letter into evidence. The trial court sustained son's objection to the admission of such evidence. Thereafter, father did not proffer the letter into the record. Accordingly, we find father did not properly preserve his right to allege error in the trial court's exclusion of the letter pursuant to Evid.R. 103(A)(2). Assuming, arguendo, father proffered the letter, we find the trial court's exclusion of the evidence had no prejudicial effect upon father. A review of the letter reveals son offered to pay 9% interest on his share of the 1989 loss on the subject property. In their settlement agreement, father and son agreed neither party owed the other any monies in connection with the property as of April 13, 1993. As such, any monies son owed father, including interest thereon, for the 1989 loss was subsumed by the agreement. In light of the settlement agreement, we find the letter is irrelevant, and find the trial court did not err in excluding the letter from evidence. Father's fifth assignment of error is overruled.
 VI
In his final assignment of error, father argues the trial court erred in presenting confusing instructions to the jury and refusing to allow father to introduce a taped conversation between son and him. With respect to the trial court's alleged error in instructing the jury, father did not object at trial to the instruction. As such, we find father has waived his right to assert any error as to this issue on appeal. See, Civ.R. 51(A). We now turn to the second prong of this assignment of error. Upon review of the audiotape conversations between father and son, we agree with the trial court's findings the tape neither provides rebuttal evidence nor benefits father. Accordingly, we find the trial court did not err in excluding the taped conversations from evidence. Father's sixth assignment of error is overruled.
 CROSS APPEAL I
In his first assignment of error on his cross-appeal, son maintains the trial court erred in awarding a real estate commission to Nu-Trend Realty, Inc. Son asserts because Nu-Trend Realty was never made a party to the instant action, the entity had no right to recover. Via Judgment Entry dated April 22, 1997, the trial court ordered the subject property be sold pursuant to the terms of the purchase contract between father and a private individual. The purchase contract between father and son, and the individual purchasing the subject property, which is signed by both father and son, provides for a commission as follows: 15. Real Estate Commission: Seller [father and son] shall be responsible for payment of all real estate broker commissions associated with the transaction. It is understood that Seller [father and son] is paying a commission to Nu-Trend Realty, Inc. of seven percent (7%). Buyer is not responsible for payment of any real estate commission.
Because son agreed in writing to the payment of a real estate commission to Nu-Trend Realty, son cannot now allege error in the trial court's awarding a commission to the corporation. Accordingly, we find the trial court did not err in awarding a commission to Nu-Trend Realty. Son's first assignment of error is overruled.
 II
In his second assignment of error, son contends the trial court erred in awarding any judgment against him. Essentially, son raises a manifest weight of the evidence claim. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279. The jury was free to accept or reject all or any part of the testimony of the witnesses and assess the credibility of those witnesses. Upon review of the entire record in this matter, we find the jury's finding in favor of father on his breach of oral contract claim is supported by some competent, credible evidence; therefore, we find the award against son in the amount of $4,075 was not against the manifest weight of the evidence. Son's second assignment of error is overruled.
The judgment entries of the Delaware County Court of Common Pleas are affirmed.
By: Hoffman, J. Wise, P.J. and Gwin, J. concur